(C. D. 1348)

CONCORD WATCH CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 20, 1951)

*Lane, Young & Fox* (*James W. Bevans* and *William H. Fox* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Richard H. Welsh* and *Guy Gilbert Ribaudo,* special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff imported certain complete desk or table watches. The watch movements were classified for duty at appropriate rates pursuant to the provisions of paragraph 367 (a) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 367 (a)), as modified by the trade agreement between the United States and Switzerland, effective February 15, 1936 (69 Treas. Dec. 74, T. D. 48093). The classification of the movements is not challenged by plaintiff, the whole controversy being related solely to the proper classification of the remaining portion of the articles.

Various exhibits were introduced in evidence to illustrate the several items comprising the importation.

Exhibit 1 represents the item described on the invoice accompanying the entry as No. 73B, "round yellow metal calottes with ring." This exhibit also represents another item No. 73B except that it is described as "chromo plated round calottes with ring."

Illustrative exhibit 2 was introduced in evidence to show exhibit 1 with the movement removed.

Illustrative exhibit 3 is a photograph of item No. 38 described on the invoice as "gilt metal pendulette square 15 x 15 Style #760."

Illustrative exhibit 5 is a photograph representing item No. 61 described on the invoice as "gilt metal pendulette square 15 x 15 Style #547." It appears from the record that a sample of this timepiece was introduced as exhibit 4 but was subsequently withdrawn.

Illustrative exhibit 6 which, like illustrative exhibit 3, was a photograph of item No. 38 was also later withdrawn.

There were also introduced in evidence certain portions of two catalogs. Illustrative exhibit 7 comprises pages 29 to 53 of a catalog of Stolz Frères S. A., Le Locle (Suisse), exclusive of the illustrations therein marked "X." Illustrative exhibit 8 consists of a catalog of Arthur Imhof of La Chaux-de-Fonds (Switzerland), exclusive of pages 26 through 32.

With respect to exhibit 1, the controversy hinges upon the question whether the metal ring, which is attached thereto and is so fashioned as to permit its adjustment to appropriate angles to hold the timepiece in proper position on a table, desk, or other surface where the time may be readily observed, is an integral part of the watchcase.

It is observed that exhibit 1 is a type of traveling watch which is so constructed as to lie flat when not in use for convenience in carrying it in a traveling bag or case.

Illustrative exhibits 3 and 5 depict conventional rectangular desk or table watches with bases or feet which enable them to stand erect,

and the article represented by illustrative exhibit 5 has an additional decorative outer frame.

The collector classified the item invoiced as No. 73B (exhibit 1), whether of yellow metal or of chrome plating as follows: The cases as base metal watchcases within the purview of paragraph 367 (f) (4) of said act (19 U. S. C. § 1001, par. 367 (f) (4)), as modified, *supra*, upon which duty was assessed at the rate of 10 cents each plus 25 per centum ad valorem, and the rings attached to the back of the cases as articles or wares not specially provided for, composed of base metal, within the provisions of paragraph 397 of said act (19 U. S. C. § 1001, par. 397), and subject to duty at the rate of 45 per centum ad valorem.

With respect to the items invoiced as No. 38 and No. 61, *supra*, represented by illustrative exhibits 3 and 5, respectively, the collector's classification was as follows: The cases as watchcases in part of gold as provided in paragraph 367 (f) (2) of said act (19 U. S. C. § 1001, par. 367 (f) (2), as modified, *supra*, dutiable at 40 cents each, plus 30 per centum ad valorem; the so-called feet, bases, and certain outside portions of the watches as articles or wares not specially provided for, within the scope of paragraph 397, *supra*, of the kind therein made dutiable at 65 per centum ad valorem.

Plaintiff claims that the rings on item No. 73B (exhibit 1) are integral parts of the cases and are subject to the same ad valorem rate of duty as was assessed on the cases, namely, 25 per centum. With respect to items No. 38 and No. 61 (illustrative exhibits 3 and 5, respectively), plaintiff contends that the feet, bases, and other portions of the articles, which were assessed at 65 per centum ad valorem, are integral parts of the cases and hence subject to the same ad valorem rate of duty as was assessed on the cases, namely, 30 per centum.

As stated by plaintiff in its brief, it is contended—

* * * that the cases of the desk or table watches imported in this shipment are entireties, subject only to assessment of duties at the appropriate rates under Par. 367 (f), as modified, and that no part of the cases is dutiable under Par. 397.

Three witnesses were called by plaintiff and none by defendant.

The first witness, William W. Herr, testified that he was secretary and treasurer of the plaintiff company with which he had been associated since 1922; that he assisted in managing the business and made periodic trips to Switzerland to place orders "and also do some selling"; that in the United States he covers "the Mid-Western territory for the company periodically"; and that he is familiar with the merchandise in controversy which is of a class that his company has been importing since 1922. He stated that while the models may differ slightly from time to time, they are, nevertheless, similar. With reference to item No. 73B (exhibit 1), the witness testified that the entire

case, including the ring, is made at one factory; that the assembler fits the movement into the case and then snaps on the ring; that he bought and sold item No. 73B as a complete watch; and that the article would not be complete without the ring. Testifying with relation to items No. 38 and No. 61 (illustrative exhibits 3 and 5, respectively), the witness stated that he has always bought and sold the cases in a completed state, that is, with the feet, bases, and the outer frame. With regard to the articles represented by illustrative exhibits 3 and 6, he testified that the feet or bases are attached to the case proper with screws. He stated further that the articles represented by the various exhibits were always bought and sold as entireties and that they were so classified by the collector of customs at the port of New York up until April 1947.

On cross-examination, Mr. Herr stated that if the ring on illustrative exhibit 2 were removed, the watch movement would be cased but that he could not sell the merchandise without the ring, and that the same would be true as to the other items if the feet, bases, or outer frames were removed.

On being questioned by the court, the witness stated that he considered the leather holders for traveling clocks to be part of the cases. (As a matter of fact, they are separately classified for duty as will appear, *infra*.)

The second witness called on behalf of the plaintiff was George Berge, chief liquidator at the port of New York, who testified that since April 2, 1947, to his knowledge, articles similar to those here in controversy have been classified at the rates applicable to the movement separately, to the case separately, and the base or parts which are not essential parts of the case were classified within the purview of paragraph 397, *supra*; and that prior thereto classification was made of the movement separately, and the balance of the article as a case. He stated that the change in classification was brought about by a Customs Bureau letter of April 2, 1947, addressed to the collector of customs at Los Angeles, which is not here in evidence but which counsel for the Government stated was circularized by the Treasury Department to all customs officials for their guidance.

Aaron Balmages also testified on behalf of the plaintiff. Mr. Balmages stated that he has been employed at the port of New York for the past 10 years as a customs examiner's aid and watch expert, and that his experience in the watch industry has covered a span of 24 years; that it involved all phases of watchmaking, and brought him into contact with foreign- as well as domestic-made watches. He stated that in his official capacity he has passed on articles of the kind represented by exhibit 1 and illustrative exhibits 3 and 5 during the past 10 years; that they are known as desk or table watches or

clocks, and that articles like illustrative exhibits 3 and 5 may also be called boudoir clocks. With regard to illustrative exhibit 2, he testified that the case would be the housing which encloses the movement within the purview of paragraph 367 (f) ; the ring would come within the scope of paragraph 397; and that he does not consider the ring to be a part of the watch. He stated further that the articles represented by the pictures in illustrative exhibit 7 (catalog of Stolz Frères S. A.) which have attachments comparable to the aforesaid ring would be returned in the way described in connection with illustrative exhibit 2.

Further, he testified that with respect to watches enclosed in leather cases such as are represented on page 49 of illustrative exhibit 7, the leather case would be separately dutiable in paragraph 1531 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1531) and are not parts of the watchcases.

He also stated that the main purpose of the stand, base, easel, or ring would be to hold the watch in position so that you could actually read the time, and that those parts do not have any other separate or independent practical use.

Referring to the illustration on the left side of page 13 of illustrative exhibit 7 (catalog of Stolz Frères S. A.), representing a watch with a leather case or covering, the witness stated that the back of the watchcase is set into the leather part with three screws. As the screws are tightened in the back of the metal watchcase, pressure is exerted against the frame of the leather and that pressure, in turn, holds the movement in place, and the backing or casing of leather is just as permanent as if it were a metal case. Similar testimony was given by this witness with regard to illustrations 459 and 262 on page 15 of said illustrative exhibit 7, the only difference being the manner in which the watches are permanently affixed to the leather cases.

With regard to wrist watches, he stated that they are sometimes imported with bracelets; that other wrist watches come separately from the bracelets; and that, generally speaking, wrist watches are not imported with the bracelets attached. The movement, the case, and the wristlet would be classified separately. He also stated that a wristlet is constructed so that the push pins which as a rule come with the watchcase and are readily removable can be pushed through the ends of the wristlet. Various sizes of wristlets are designed to fit watchcases. He testified that wristlets differ from the rings in articles like exhibit 1 which are made specifically for the cases in that ordinarily movements are brought into the country in cases and wristlets therefor are purchased in this country as needed.

With reference to his use of the word "housing" appearing in paragraph 367 of the Tariff Act of 1930, the witness stated that the term might refer to the housing for various items included within the

provisions of said paragraph, but that in the watch business the enclosures for watch movements are referred to as watch "cases" rather than as watch "housings."

The provisions of the tariff law with which we are here concerned are as follows:

Paragraph 367 (f) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 367 (f)), as modified by the trade agreement between the United States and Switzerland, effective February 15, 1936 (69 Treas. Dec. 74, T. D. 48093)—

All cases, containers, or housings, designed or suitable for the enclosure of any of the [watch] movements, mechanisms, devices, or instruments provided for in paragraph 367, whether or not containing such movements, mechanisms, devices, or instruments, and whether finished or unfinished, complete or incomplete, except such containers as are used for shipping purposes only:

* * * * * * *

(2)  If in part of gold, silver, or platinum, or wholly of silver_____40¢ each and 30% ad val.

* * * * * * *

(4)  If of base metal (and not containing gold, silver, or platinum)_____10¢ each and 25% ad val.

Paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397)—

Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 65 per centum ad valorem; if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

Simply stated, the question before us for determination is whether the ring forming part of item No. 73B (exhibit 1), the feet or base forming part of item No. 38 (illustrative exhibits 3 and 6), and the base and outer frame constituting part of item No. 61 (illustrative exhibit 5) come within the provision in paragraph 367 (f), as modified, *supra*, for "cases  *  *  *  suitable for the enclosure of any of the movements  *  *  *  provided for in paragraph 367."

No evidence has been presented to establish that there is a commercial meaning for the word "cases" as used in said paragraph differing from its common meaning. It is too well settled in customs law to warrant lengthy discussion that "tariff acts are drafted  *  *  *  in the language of commerce, which is presumptively that in common use." *Meyer & Lange et al.* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436.

Reference to lexicographic authorities discloses the following definitions:

Funk & Wagnalls New Standard Dictionary (1942) :

**case**, *n*, **1.** Anything intended to enclose or contain something.

\* \* \* \* \* \* \*

**4.** An outer and enclosing part that protects what is within; as, the *case* of a watch or clock; \* \* \* [Italics quoted.]

Webster's New International Dictionary, Second Edition (1948) :

**case** \* \* \* **1.** A box, sheath, or covering of any kind; as, a *case* for holding goods; a *case* for spectacles; the *case* of a watch, \* \* \* [Italics quoted.]

In the light of the foregoing definitions, it is clear that the provision in paragraph 367 (f), as modified, *supra*, for "cases \* \* \* suitable for the *enclosure* of any of the movements \* \* \* provided for in paragraph 367" [italics added] applies only to so much of the articles in controversy as are necessary to "enclose or contain" or to serve as a "covering" for the watch movements.

As will be pointed out, *infra*, to hold otherwise would lead to a distortion of the intent of Congress *ad absurdum*.

It is the sole contention of the plaintiff herein that the cases for the watches in controversy constitute entireties; that they would be incomplete desk or table watchcases without the parts which the collector has assessed pursuant to paragraph 397, *supra*; that, in the very nature of things, the said parts would have absolutely no use other than as integral and component parts of the cases to which they are permanently attached, as imported; and that they are necessary to the completeness of the cases and to the use thereof.

At the outset, it is important to note that paragraph 367 of the Tariff Act of 1930 provides, *inter alia*, for watch movements and parts thereof, and for watchcases, and that there is no provision in said paragraph or elsewhere in the act for an entirety known as a watch, whether it be a pocket watch, a wrist watch, or a desk watch.

The broad principle of entireties in customs law that when two or more articles are imported together, are designed and intended to be used together, and that a joining together thereof creates a complete article of commerce, merging them into a new article having a new name and new use, they will be considered to be a tariff entity, cannot be applied in the case of watches nor of watchcases on the facts as here presented. Were it not otherwise provided for by tariff law, watch movements and cases when imported as units of merchandise might conceivably be considered as entireties as were the bedspreads and fringes in the case of *Salemi & Sons* v. *United States*, 19 C. C. P. A. (Customs) 43, T. D. 44892, and the bell-shaped metal articles suspended from ornamental metal stands together with metal mallets for striking purposes in the case of *United States* v. *Woolworth*, 23 C. C. P. A. (Customs) 365, T. D. 48212. There are numerous other

cases of like import in customs law, several of which have been cited by plaintiff's counsel.

However, Congress in the Tariff Act of 1930 has provided for separate rates of duty applicable to watch movements and to watchcases. Inasmuch as it appears from the testimony here presented and by reference to lexicographic authorities, *supra*, that a watchcase is that article which "encloses or contains" a watch movement, we must hold that the rings, bases, feet, and outer frames are not integral parts of watchcases in a tariff sense inasmuch as they are not "designed or suitable for the enclosure of" watch movements.

Whereas it is true that the rings, bases, feet, and outer frames attached to the articles in controversy are essential to the completeness of the particular desk watches, nevertheless, the watchcases as enclosures for watch movements are complete watchcases without said attachments. The rings, bases, feet, and outer frames can be readily separated from the cases proper, their sole function being to hold the watches as entities in position, and they do not serve the purpose to which watchcases are dedicated, namely, to enclose or contain watch movements.

In this regard, the articles in controversy are not unlike watch bracelets for wrist watches. Such watch bracelets, if composed of metal, would find classification within the *eo nomine* provision therefor in paragraph 1527 (c) of the Tariff Act of 1930, whereas the watchcases and the watch movements would be classified in paragraph 367, *supra*. So, too, the supporting leather cases or framework of traveling watches would likewise be separately dutiable from the metal cases containing the movements. (See paragraph 1531 of said act.) It is evident that the joining of a watch bracelet to a watchcase creates an article which is something more than is contemplated by the provision for watchcases in said paragraph 367 (f). A like result is accomplished by the combining of rings, bases, feet, or outer frames to the watchcases presently before us. We are of the opinion that the articles in controversy are not integral parts of desk watchcases any more than watch bracelets are parts of wrist watchcases, or leather containers are parts of traveling watchcases.

Furthermore, to sustain the claim of plaintiff herein could lead to incongruous results, as is readily apparent by reference to plaintiff's illustrative exhibit 7. Page 29 thereof depicts a combination watch, thermometer, barometer, calendar, and hygrometer, affixed to a stand in the form of a navigator's wheel  Page 45 portrays a desk watch arranged in the form of a globe supported on a base from which there extends a semicircular piece of metal supporting an airplane. Surely, it cannot be said that such elaborate containers of watch movements are encompassed by the provision of paragraph 367 (f) for watchcases

for the *enclosure* of watch movements. Emphasis is placed upon the word "enclosure" appearing in paragraph 367 (f), *supra*, for the reason that the provision for clock cases in paragraph 368 (e) of the Tariff Act of 1930 is not so qualified.

Worthy of note in this connection is the case of *D. Collamore & Co.* v. *United States*, 5 Treas. Dec. 482, T. D. 23792. The merchandise there in issue was represented by a sample which was described as consisting of a time movement set in a metal case, which in turn was set in a brass stand ornamented with 32 imitation precious stones around the dial. A brass ring was attached to the outer case by which the timepiece was designed to be suspended in the beak of a metal eagle, which stood on a base of metal or marble. Two hemispheres of glass were set in the outside case covering the face and the back of the timepiece. The importer's claim for classification of the importation as entireties was overruled, the court sustaining the classification of the importation by the collector as movements, cases, and stands, and separately dutiable within the respective paragraphs of the Tariff Act of 1897 providing for watch movements, watchcases, and manufactures of metal.

After a careful consideration of the record before us and the various authorities to which reference has been made, we find and hold that the metal ring on exhibit 1, representing the merchandise invoiced as item No. 73B, and the metal feet or bases and certain outside portions of the watches depicted in illustrative exhibits 3 and 5, representing the merchandise invoiced as items No. 38 and No. 61, respectively, are not integral parts of watchcases for the *enclosure* of watch movements within the meaning of paragraph 367 (f), *supra*, as claimed by the plaintiff herein, but are articles or wares, composed of metal, within the scope of paragraph 397 of the Tariff Act of 1930.

All claims of the plaintiff are overruled, and the classifications of the collector are affirmed.

Judgment will be entered accordingly.